### IN THE MATTER OF THE ASSIGNMENT OF THE MAHASKA COAL COMPANY.

**Acceptance of Order.** It was provided by a lease that lessee might, at her option, apply stipulated royalties in payment of liens on the property. She accepted orders to pay creditors of the lessor certain sums out of the first royalties *to become due under the lease. Held*, the liability on the acceptance is contingent and nothing can be taken under it except what may remain after the lessee has exercised her option to pay liens.

PRIORITY. Accepted orders take priority in the order of their acceptance, those accepted at the same time having no priority over each other.

SAME. The fact that lessee and drawee purchased some of the orders and had them assigned to others, does not affect this rule.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

### SATURDAY, OCTOBER 5, 1895.

On the third day of December, 1890, the Mahaska Coal Company made to M. B. Foster a lease of its "coal lands, rights, and licenses for mining, mining machinery, apparatus, buildings, and all its mining property," as described in the lease.   The lessee was to pay to the Mahaska Coal Company, for the privilege of mining said lands and other rights under the lease, a royalty of ten cents for each ton on merchantable lump coal so mined, the amount to be determined in a way specified in the lease.   The term of the lease was five years, with a right of the lessee to renew it.   The lease also provided that the coal company should pay and discharge all liens then on said property, and taxes that might thereafter become due, promptly as they should mature, and, in case of its failure to do so, the lessee might, at her option, pay such liens and taxes, and deduct the amount

of such payments from the royalty thereafter accruing. By another provision of the lease, the lessee, at her option, at any time before the first of January, 1898, had the right to purchase the entire plant for the agreed price of eighteen thousand dollars, with interest thereon at six per cent. from the date of the lease, and, in the event of such purchase, all royalties paid under the lease were to be deducted from the purchase price, and the lessee was to take the plant subject to liens thereon, the amount of which also was to be deducted from the purchase price. The lessee, Mrs. Foster, took possession of the plant on the execution of the lease, and has since operated it. On the day that the lease was executed, the Mahaska Coal Company drew five orders, to its creditors, on Mrs. Foster, as lessee, directing her to pay the same out of royalties due from her under the lease that day made. These orders were accepted on the same day in the following order: One to Warfield, Howell & Watt Co., for seven hundred and twenty-four dollars and thirty-seven cents, at four o'clock P. M.; one to H. A. Foster, for three hundred and one dollars and thirty-seven cents, at five o'clock P. M.; one to R. E. Harris, for four hundred and forty-five dollars and eleven cents, at 5:15 P. M., one to Valley National Bank, for four thousand and fifty dollars, at 6 P. M.; and one to J. R. Barcroft, for three thousand six hundred and fifty dollars, at 6 o'clock P. M. Soon after the making of the lease to Mrs. Foster, the Mahaska Coal Company made an assignment for the benefit of its creditors, and C. S. Newcomb was made assignee. On the fifteenth day of December, 1892, Mrs. Foster filed with the assignee her election to purchase the property under the provisions of the contract. At the time of this election, the royalties, because of coal mined under the lease, amounted to six thousand one hundred and eighty-seven dollars.

Mrs. Foster had taken up, either by payment or pur-
chase, the Warfield, Howell & Watt Co. and the H. A.
Foster orders, and made advances on the Valley Bank
and Barcroft orders. It appears that the Mahaska Coal
Company held its interest in the plant as lessee, and
were to pay royalties on coal mined, as stipulated,
which royalties were liens; and Mrs. Foster had, as she
was permitted to do by her lease, paid an amount as
such royalties, and had paid other liens to laborers,
mortgagees, and others, before her election to purchase
the plant. The lessee, Mrs. Foster, when making her
election to purchase the plant, presented an account
showing the items which she claimed should be
deducted from the purchase price; and, because of
doubts, the assignee, Newcomb, commenced this pro-
ceeding, asking the court to have the proper parties
brought in, and as to them "adjust the matters and things
required by the contract," before making the convey-
ance, and also to make an order of distribution. The
Valley National Bank and J. R. Barcroft filed objec-
tions to the account as presented by Mrs. Foster, and,
upon the issues presented, such proceedings were had
that the court found, after making all deductions from
the purchase price, because of payments and advances
by Mrs. Foster, that there remains a sum of five thou-
sand seven hundred and twenty-three dollars and sixty-
one cents, to be paid on five orders above mentioned as
follows: The Valley Bank order, one thousand nine
hundred and forty-seven dollars and thirty-eight cents;
Barcroft order, one thousand three hundred and ninety-
nine dollars and twenty-two cents; Harris order,
two hundred and thirty-five dollars and four cents;
remainder, two thousand one hundred and forty-one
dollars and ninety-seven cents, to Mrs. Foster, as the
holder of the Warfield, Howell & Watt Co. and the H.
A. Foster orders. From the order of the court, Mrs.
Foster appealed.—*Modified and affirmed.*

*C. C. & C. L. Nourse* for appellant.

*Earle & Prouty* for appellee, Valley National Bank.

Granger, J.—I. Appellant insists that the court erred in making its deductions from the amount of the purchase price in such a way that the remainder for distribution is too large. Her estimate fixes the balance at two thousand five hundred and forty-nine dollars and eighty-seven cents. The difference arises from different views as to how the five orders, accepted by Mrs. Foster, should be treated. The court seems to have treated them all as without preference, and by computing the interest on them until April 11, 1893, they are made to aggregate ten thousand eight hundred and thirty-nine dollars and twenty-one cents. The amount found by the court for distribution will pay thereon fifty-two and eight-tenths per cent., and such application was made. Disregarding these five orders, the amount of liens and charges paid off by Mrs. Foster is twelve thousand eighty-two dollars and eighteen cents. The unpaid liens assumed by her as a part of the purchase price are two thousand four hundred and thirty-five dollars and twenty-one cents, making an aggregate of liens, paid and unpaid, of fourteen thousand five hundred and seventeen dollars and thirty-nine cents. Add to this the five thousand seven hundred and twenty-three dollars and sixty-one cents which the court found for distribution, and we have twenty thousand two hundred and forty-one dollars, which the parties agree is the amount of the purchase, including interest to April 11, 1893. Appellant's theory is that the orders should be preferred in the order of their acceptance, and paid in full, and thus credit her with the full amount of the Warfield, Howell & Watt Co., and the H. A. Foster orders, taken up by her, and the amounts advanced by her on

the Valley Bank and Barcroft orders. If the rule adopted by the court is to obtain, whatever amount she has paid, in taking up the orders, in excess of the fifty-two and eight-tenths per cent. of the claims, she must lose, or, in other words, she must pay that much in excess of the contract price for the plant. Whether or not such is to be the result depends on the legal effect of her acceptance of the orders.

It is the theory of the bank that the acceptance "constituted an equitable assignment of the said royalties to the said bank," and Pomeroy's Equity Jurisprudence is cited to show that for such a purpose the fund need not be actually in being, but that if it will, in the due course of things, arise, it is sufficient. See volume 3, section 1283. We think a correct interpretation of the acceptance must be made in the light of the rights and obligations of parties under the terms of the lease. The following are some of its provisions: "The party of the second part agrees to pay to the party of the first part, its grantee, successors, or assigns, in full for the use of said plant and of all said property, whether real or personal or mixed, more fully described above, and for coal mined from said lands, the sum of ten cents per ton for each ton of merchantable coal so mined. * * * The amount of merchantable lump coal, of the character above described, mined, shall be reported by verified statement by the party of the second part, or some proper agent of the said second party, on the fifteenth day of each and every month, and shall show clearly the amount of coal mined during the last preceding calendar month; and the party of the first part may determine the accuracy of said reports by examining the account books of miner's weights of party of the second part, and the said royalty shall be payable at the said mine on the twenty-eighth day of each and every month for the calendar month next preceding; but it is expressly agreed that the party of the second

part may, if she so desires, pay the royalties, rents, and moneys that may now be due from the party of the first part on said Lacy and Houtz leases, or that may hereafter become due, and reserve the same out of the royalties due the party of the first part thereunder.   *   *   * Said party of the first part agrees to pay and discharge all liens now on said mine and mining property, and taxes that may hereafter become due, promptly as they mature; and, in case of its failure so to do, the said party of the second part may, at her option, pay said taxes and liens, and deduct the same, with interest at six per cent., from the royalties thereafter maturing." The order accepted by appellant reads as follows: "Des Moines, Iowa, Dec. 3, 1890.   M. B. Foster: Please pay to the Valley National Bank of Des Moines, Iowa, the sum of four thousand and fifty dollars, with interest at eight per cent., out of the first royalties due from you under lease this day made by this company to you of its mining property.   Said payment to be made to said Valley National Bank in payment of the promissory notes of this company held by said Valley National Bank.   [Signed]   Mahaska Coal Company."   The acceptance is as follows:   "I hereby accept the above order, this third day of December, A. D. 1890.   M. B. Foster, by H. A. Foster, Atty. in Fact." At the time of the acceptance of the order no royalties were due to any one.   It was an undertaking to pay royalties to become due to the Mahaska Coal Company under the lease.   Nothing in the language of the order or the acceptance was to change the rights or obligations of the lessee under the lease, except that, as royalties became due the company, they would be paid to the bank until the order was satisfied.   It is conceded that the order is conditional, and not negotiable.   In taking the order the bank was required to take notice of the conditions and circumstances under which the royalties would become due so as to be applied to its pay-

ment. It was bound to know that the coal company undertook to discharge all liens on the property, and that, in the event of its failure to do so, Mrs. Foster could, at her option, apply the royalties maturing to the discharge of such liens, or to reimburse her for such payment. In so far as the company made default in discharging such liens, and Mrs. Foster chose to and did apply the royalties for that purpose, they did not become due to the company, nor available for the payments of its debts under its directions.

It is urged by the bank that the acceptance of her order was her right to exercise an option to pay other liens. As we have said, nothing in the language of the order or of the acceptance shows that she intended thereby to change her rights or obligations under the lease except to pay royalties that became due the company on the order. It is thought that the acceptance or order must have referred to the royalties becoming due on the twenty-eighth of each month. It is doubtless true that the royalties did become due at that time, but only as the lease provided. They became due if not otherwise applied under the terms of the lease. Appellee quotes this language from *Mersereau v. Villari* (Sup.) 26 N. Y. Supp. 135: "The acceptance of an order payable out of the last payment to become due on a building contract is enforceable against the acceptor, though the last payment never became due, where it was prevented from becoming due by the fault of the acceptor." We have examined the case, and the "fault of the acceptor" was in her wrongfully preventing the completion of the house after the acceptance. There was no fault on the part of Mrs. Foster in exercising her option or right to pay off incumbrances on the property. Of the authorities cited, not one sustains the conclusion of appellee as to the construction of the acceptance. Until, under the terms of the lease, royalties became due the Mahaska

Coal Company, there was no fund liable for the payment of the order, and no assignment of the fund before that time could be operative except in a contingent sense.

II.    We next notice appellant's claim that the orders were payable in full in the order of their acceptance.    The orders were each made payable out of the first royalties due from her under the lease. When the first order was presented and accepted, it became a contract, binding the payee, the acceptor, and the company, that of the royalties first due the company the payee should have enough to pay the order.  As to such amount of the royalties, they could not thereafter become due the company.   The second order was of the same legal force, and applied to the conditions existing at the time of the acceptance; that is, to royalties that would, but for such order, become due the company.   The company had assigned enough to pay the first order, and hence the second order had no reference to that part of the royalties.  This rule applies throughout the acceptance of the orders, and each should be paid in full in the order of acceptance.   The Valley Bank and the Barcroft orders were accepted at the same time, and neither is entitled to preference.

There is a claim that Mrs. Foster did not pay the prior orders, but only purchased them, and had them assigned to others.    The facts in this respect are such that the court found that they had been taken up in a way to entitle her to the advantage of having paid them, and that conclusion is warranted.    They are prior as to the fund for distribution, and the particular manner of obtaining them is not material.

These conclusions sustain appellant's theory that the amount for distribution on the orders should be reduced to two thousand nine hundred and ninety-four dollars and ninety-eight cents.   From this should be

deducted the Harris order, four hundred and forty-five dollars and eleven cents, and the remainder, two thousand five hundred and forty-nine dollars and eighty-seven cents, should be applied to the bank and Barcroft orders, as follows: To the Valley Bank order, one thousand four hundred and ninety-eight dollars and sixty-three cents, and to the Barcroft order, one thousand and fifty-one dollars and twenty-four cents.

The district court ordered that on the payment of the amount found due on the Valley Bank and Barcroft orders, and the payment to the clerk of the court of the amount due on the Harris order for the use of whoever might be entitled to it, the assignee should make the conveyance of the property to Mrs. Foster, subject to the unpaid liens. The orders will stand affirmed, with the modifications as to amounts indicated in this opinion. The costs in both courts will be paid by appellees. —*Modified and Affirmed.*